■ MANDARIN TRADING LTD., Appellant, v GUY WILDENSTEIN et al., Respondents. [884 NYS2d 47]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered October 1, 2007, which granted defendants' motion to dismiss the complaint, affirmed, without costs.

Mandarin Trading seeks damages for losses allegedly sustained as a result of its reliance on an appraisal letter, dated July 28, 2000, written by defendant Guy Wildenstein, president of Wildenstein & Co., Inc., estimating the value of Paysage aux Trois Arbres, an 1892 painting by Paul Gauguin, at between $15 million and $17 million.

It is undisputed that sometime in July 2000 Patrick Blum, a director of Mandarin's parent company Phoenix Capital Reserve Fund, was approached about purchasing art for investment purposes. He was also advised by Amir Cohen that the owner of Paysage aux Trois Arbres was looking to sell it. The dissent is of the opinion that the first two causes of action for fraudulent misrepresentation are sufficiently pleaded because Mandarin alleges that it sought an appraisal before purchasing the painting

and that Wildenstein issued a misleading appraisal upon which Mandarin relied. However, missing from that conclusion is any basis for connecting Mandarin to Wildenstein. Mandarin alleges that Cohen represented to Blum that he could arrange the sale for a success fee that would be based on Mandarin's resale of the painting at auction. Cohen agreed to get an appraisal and recommended Wildenstein, a world renowned expert on Gauguin.

There is no indication who first approached Blum, although it most likely was Cohen, nor is there any allegation that Blum inquired as to who the unidentified owner was. Nor is there any allegation or evidence as to who Amir Cohen is and no allegation that he acted for or is in any way related to Guy Wildenstein. Likewise, there is no allegation or evidence as to who owned or controlled Calypso Fine Art Ltd., which actually delivered the painting to Mandarin in return for its payment of $11.8 million, or that it was in any way related to Wildenstein. Defendants presented documentary evidence that, on July 28, 2000, Guy Wildenstein wrote to Michel Reymondin, stating that the painting was well known to him since his firm had once sold it, and that he thought that in the current market the painting was worth between $15 million and $17 million. However, there is no allegation in the complaint or any evidence in the record as to who Reymondin is; who, if anybody he represented; whether he is related in any way to Wildenstein; and whether Wildenstein knew or had reason to know that his opinion as to the value of the painting was being solicited for purposes of its sale to anyone, let alone Mandarin, or that Mandarin, or any other person, would rely upon his opinion in deciding to buy the painting. For all we know, an opinion as to the painting's value may have been solicited for purposes of insurance coverage or for tax reasons.

The dissent states that Mandarin alleges that the appraisal was prepared at its request. Again, however, Mandarin fails to allege or otherwise establish to whom that request was made. If it was made to Cohen, which is most likely since he offered to get one, did Cohen then ask Reymondin to ask Wildenstein? If so, did Cohen tell Reymondin to tell Wildenstein that he was soliciting his opinion for someone, who wished to buy the painting, even if the prospective buyer wished to remain anonymous?

On August 10, 2000, Christie's International agreed to present the painting at its November 8, 2000 auction, for a price estimated at between $12 million and $16 million and a reserve price, i.e., the price below which the painting would not be sold, set at $12 million. Mandarin then purchased the painting, from a

nonparty entity, for $11.3 million. However, Christie's was unable to sell the painting, because the high bid was only $9 million.

The Wildenstein appraisal letter, which did not indicate the purpose for which the appraisal was given, was addressed to a nonparty whose relationship with Mandarin is not identified in the complaint and who is alleged on appeal to be an intermediary. The complaint alleges that defendants provided an inflated appraisal figure because they had an ownership interest in the painting; that Mandarin was unaware of defendants' interest in the painting; that defendants received amounts in excess of the painting's true market value; and that Mandarin has been unable to sell the painting for an amount even approaching the Wildenstein appraisal figure.

The complaint fails to state a cause of action for fraudulent misrepresentation, because the appraisal consists of opinion, which is not actionable (*compare Jacobs v Lewis*, 261 AD2d 127 [1999]). The appraisal contains no facts that are alleged to have been misrepresented (*see Rodin Props.-Shore Mall v Ullman*, 264 AD2d 367 [1999]; *Kimmell v Schaefer*, 224 AD2d 217 [1996], *affd* 89 NY2d 257 [1996]). The parties had no relationship with each other, and there was no indication of the purpose of the appraisal, which was not alleged to have been inconsistent with other information provided by defendants (*compare Cristallina v Christie, Manson & Woods Intl.*, 117 AD2d 284, 294-295 [1986]). Moreover, since the complaint does not allege that defendants were even aware of Mandarin's existence, it fails to state that the appraisal was made to induce Mandarin's reliance, a necessary element of fraudulent misrepresentation (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421-422 [1996]) and fraudulent concealment (*see Swersky v Dreyer & Traub*, 219 AD2d 321, 326 [1996]).

The complaint also fails to state a cause of action for negligent misrepresentation, because, without any knowledge on defendants' part of Mandarin's existence or the purpose for which the appraisal was to be used, there could be neither privity of contract between the parties nor a relationship so close as to approach privity (*see Parrott v Coopers & Lybrand*, 95 NY2d 479, 483 [2000]; *Ravenna v Christie's Inc.*, 289 AD2d 15 [2001]).

*Ravenna* is a case directly on point. There, at a single meeting with an old master paintings specialist at Christie's, the specialist gave the owner erroneous information regarding the provenance of a painting after being shown photographs of the painting. This Court dismissed the complaint, finding that there was no allegation that Christie's was retained or paid for the

advice and no allegation of a prior or subsequent dealings with Christie's. As here, all that could be gleaned from the complaint was that Christie's gave gratuitous advice based on a walk-in inquiry. Such a one-time meeting, the Court found, which did not even create a business relationship, cannot be said to have created a relationship of trust and confidence. Although it was undisputed that the specialist was aware that plaintiff would rely upon his advice, that fact alone was found to be insufficient to state a claim of negligent misrepresentation. Here, on the other hand, we have an even stronger case for dismissal. Here, there is no allegation or evidence that Wildenstein even knew of Mandarin's existence (by name or anonymously) or that Mandarin or any other person would rely upon his opinion to buy the painting. The dissent attempts to distinguish this case from *Ravenna* because here there is an allegation that the appraisal was made for a prospective buyer of a painting in which the appraiser had an undisclosed interest and that this Court noted in *Ravenna* that a business relationship had not been created. It suggests that discovery will explore the nature of Wildenstein's relationship, if any, with Mandarin; however, the plaintiff in *Ravenna* made the same argument, which was found without merit. As this Court stated: "[t]he mere hope that discovery might provide some factual support for a cause of action is insufficient to avoid dismissal of a patently defective cause of action" (*id.* at 16 [citation omitted]).

Because the existence of a valid and binding contract is not alleged, the complaint fails to state a cause of action for either breach of contract (*see Mendel v Henry Phipps Plaza W., Inc.*, 6 NY3d 783, 786 [2006]) or breach of the implied covenant of good faith and fair dealing (*see American-European Art Assoc. v Trend Galleries*, 227 AD2d 170 [1996]).

Moreover, despite allegations that defendants failed to disclose their ownership in the painting and intentionally inflated their appraisal of its value, causing Mandarin to be misled as to the painting's value and to pay an inflated price for it, and that defendants or entities related to them received a large portion of the higher-than-market purchase price, the complaint fails to state a cause of action for unjust enrichment. "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*see Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972], *cert denied* 414 US 829 [1973]). As found by the motion court, under the facts alleged Mandarin was not entitled to rely on Wildenstein's appraisal, and even if defen-

dants received a benefit from Mandarin, it has not shown that any enrichment was unjust, especially because Mandarin could have, but did not, obtain its own appraisal from Wildenstein. As the court found, Mandarin's unjust enrichment claim cannot be a back door to recovery based upon reliance on the appraisal, when it was not entitled to rely upon the appraisal in the first place. Concur—Andrias, Catterson and Moskowitz, JJ.

Tom, J.P. (dissenting in part). While I concur that the complaint does not state grounds for relief at law, I conclude that a claim in equity is sufficiently stated. At issue is whether the complaint adequately pleads that defendants have been unjustly enriched, not whether plaintiff will ultimately be able to prove it. At this preliminary stage of the proceedings, on an undeveloped record, it is premature to adopt Supreme Court's conclusion that "plaintiff has not demonstrated that equity and good conscience entitle plaintiff to the relief sought."

The complaint seeks damages alleged to have been sustained as a result of plaintiff's purchase of Paysage aux Trois Arbres, a painting by Paul Gauguin, in reliance on an appraisal obtained from defendant Guy Wildenstein, acting on behalf of defendant Wildenstein & Co., Inc. Included are sums expended to facilitate the purchase of the painting from entities in which defendants had an interest. As this Court has observed, under a theory of unjust enrichment, "recovery is available not only where there has been an actual benefit to the other party but, in the instance of a wrongdoing defendant, to restore the plaintiff's former status, including compensation for expenditures made in reliance upon defendant's representations" (*Martin H. Bauman Assoc. v H & M Intl. Transp.*, 171 AD2d 479, 484 [1991], citing *Farash v Sykes Datatronics*, 59 NY2d 500, 505 [1983]). Thus, a cause of action for unjust enrichment is the appropriate vehicle to pursue the recovery plaintiff seeks.

The complaint states, "Defendants knew that an appraisal coming from them would be reasonably relied upon by the purchaser of the Painting." To recover under a theory of unjust enrichment, it is not necessary to show, as Supreme Court suggested, "that defendants' conduct was tortious or fraudulent, as it relates to plaintiff." To the contrary, "[u]njust enrichment . . . does not require the performance of any wrongful act by the one enriched" (*Simonds v Simonds*, 45 NY2d 233, 242 [1978]). Rather, "[a] quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another . . . It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have

placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it . . . Thus, if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass, such money may be recovered back, for the law implies a promise from the wrong-doer to restore it to the rightful owner" (*Miller v Schloss*, 218 NY 400, 407-408 [1916]). There is no requirement that the aggrieved party be in privity with the party enriched at his or her expense (*see Sperry v Crompton Corp.*, 8 NY3d 204, 215 [2007]; *Bradkin v Leverton*, 26 NY2d 192, 195 [1970]; *Joan Briton, Inc. v Streuber*, 36 AD2d 464 [1971], *affd* 30 NY2d 551 [1972]).

The facts alleged in the complaint to support plaintiff's cause of action for unjust enrichment are that defendants issued an inflated appraisal of the painting, knowing that due to their worldwide expertise in the works of Paul Gauguin, "an appraisal coming from them would be reasonably relied upon by the purchaser of the painting." While defendants had not been told the purpose of the appraisal, because of their ownership interest in the subject painting they certainly should have been aware that it was being sought in connection with a prospective purchase. By further failing to disclose their interest in the work, defendants gave plaintiff no basis to question the impartiality of their assessment of its value.

There is no question that privity is lacking so as to support a contract action based on the appraisal and that no misrepresentation was directly made to plaintiff so as to give rise to an action for fraud, fraudulent misrepresentation or negligent misrepresentation. Moving beyond the elements necessary for an action at law to considerations of equity, "[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972], *cert denied* 414 US 829 [1973]).

The involvement of defendants in the multifarious aspects of this transaction should give us pause. According to the complaint, the purchase was initiated when Patrick Blum, a director of plaintiff's parent, Phoenix Capital Reserve Fund, was approached by J. Amir Cohen about purchasing art works as an investment. Cohen informed Blum that the owner of the Gauguin was looking to sell it and that an appraisal of the painting should be obtained from Guy Wildenstein, a world renowned expert. In an appraisal dated July 28, 2000, he valued the work

at between $15 and $17 million. A certificate of authenticity for the painting was issued by Daniel Wildenstein, on behalf of the Wildenstein Institute in Paris. The Gauguin was sold on August 25, 2000 by Peintures Hermes, a Swiss company owned by Guy, Daniel and Alec Wildenstein. The invoice provided by the seller indicated that although it was once owned by "Wildenstein, New York" (Wildenstein & Co., Inc.), it was presently in a "Private Collection." Following plaintiff's payment of $11.3 million to Calypso Fine Art Ltd., which acted as intermediary in the transaction, $9.5 million was transferred to the Wildensteins' company, Peintures Hermes, which then paid $8.8 million to the owner, Allez la France Ltd., in which defendants also had an interest. Plaintiffs incurred more than $2 million in expenses in connection with the purchase. At an auction held on November 8, 2000, the painting drew a high bid of only $9 million, which was lower than the reserved price. These facts make clear that although privity is lacking with respect to the appraisal, there is privity between plaintiff and defendants' companies with respect to the transaction sufficient to hold defendants liable on the ground that they were unjustly enriched by plaintiff's purchase (*cf. Sperry*, 8 NY3d at 216 [connection between various sellers of chemicals and purchaser using them to manufacture its products too attenuated to support claim for unjust enrichment]).

On a motion to dismiss a pleading under CPLR 3211 (a) (7), the sole inquiry is whether, according the facts alleged in the complaint every favorable inference, any cognizable cause of action can be made out (*see e.g. Merrill Lynch, Pierce, Fenner & Smith, Inc. v Wise Metals Group, LLC*, 19 AD3d 273, 275 [2005]). The facts asserted in the complaint sufficiently allege that defendants used their superior knowledge and contacts in the art world to interest plaintiff in purchasing the painting and to manipulate plaintiff into paying an inflated price in reliance on not only the appraisal provided by Guy Wildenstein, but also the certificate of authenticity provided by Daniel Wildenstein and the provenance provided by Peintures Hermes, the Wildensteins' company.

There is no disagreement that the complaint fails to state an action for which the law affords relief because the asserted misrepresentation with respect to the value of the painting was not made to plaintiff but to an intermediary. As Supreme Court stated, the claims at law fail "because, under the facts alleged, plaintiff was not entitled to rely on the Appraisal." The court, however, then simply applied the same rationale to dismiss plaintiff's prayer in equity, a disposition endorsed by the majority.

The prevailing rule at law is that, under the doctrine of caveat emptor, a party to a transaction is required to assess its value and fitness to his or her circumstances, and the failure to exercise due care will preclude the grant of relief (*see e.g. Charles Hyman, Inc. v Olsen Indus.*, 227 AD2d 270, 277 [1996] ["(a) party will not be relieved of the consequences of his own failure to proceed with diligence or to exercise caution with respect to a business transaction"]; *First Nationwide Bank v 965 Amsterdam*, 212 AD2d 469, 472 [1995] [debtor's failure to make independent analysis of property's suitability is governed by caveat emptor]). While mere nondisclosure, such as defendants' failure to disclose their interest in the subject painting, is generally not actionable, this Court has recognized an exception where the seller has created a situation that substantially impairs the value of the transaction to the buyer. In those circumstances, the seller, as a matter of equity, is obligated to disclose to the purchaser information material to the value of the transaction (*Stambovsky v Ackley*, 169 AD2d 254, 259 [1991]).

Accepting, as we must, the allegations of the complaint as true, defendants fostered the impression that the Gauguin was worth much more than its actual value, causing plaintiff to overpay and thereby impairing the value it received (*see Cox v Microsoft Corp.*, 8 AD3d 39, 40 [2004] ["plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment"]). Because defendant Guy Wildenstein is the acknowledged expert on Gauguin, the actual value of the painting was both peculiarly within his knowledge and readily accepted as authoritative. And because he derived a benefit as a result of the inflated appraisal, it cannot be characterized as merely "gratuitous advice" (*cf. Ravenna v Christie's Inc.*, 289 AD2d 15, 16 [2001]).

The complaint states a basis for equitable relief from the contract of sale. As stated in *Stambovsky*, "Where a condition which has been created by the seller materially impairs the value of the contract and is peculiarly within the knowledge of the seller or unlikely to be discovered by a prudent purchaser exercising due care with respect to the subject transaction, nondisclosure constitutes a basis for rescission as a matter of equity. Any other outcome places upon the buyer not merely the obligation to exercise care in his purchase but rather to be omniscient with respect to any fact which may affect the bargain. No practical purpose is served by imposing such a burden upon a purchaser. To the contrary, it encourages predatory business practice and offends the principle that equity will

suffer *no wrong to be without a remedy*" (169 AD2d at 259). We further noted, "It has been remarked that the occasional modern cases which permit a seller to take unfair advantage of a buyer's ignorance so long as he is not actively misled are 'singularly unappetizing' " (*id.* at 260, quoting Prosser, Torts § 106, at 696 [4th ed]). Having impaired the value of plaintiff's bargain by issuing an inflated appraisal, defendants were equitably obligated to reveal their interest in the transaction.

Plaintiff has stated grounds for equitable relief and is entitled to the opportunity to establish that defendants were unjustly enriched to the extent the appraised value of the Gauguin was inflated above its actual value. Thus, should plaintiff prevail, he should be permitted to recover the excess consideration paid as well as such reasonable expenses incurred in connection with the purchase as may be consequent upon the inflated appraisal.

Accordingly, the order should be modified to the extent of reinstating the cause of action for unjust enrichment.

Nardelli, J. (dissenting). I would reverse, deny the motion to dismiss the complaint, and reinstate the complaint.

At issue is whether the claims alleged in the complaint are sufficient to withstand a pre-answer motion to dismiss. The following factual recitation is derived from the complaint. It is alleged that Phoenix Capital Reserve Fund, the parent company of plaintiff Mandarin Trading, was approached in July 2000 about purchasing a Paul Gauguin painting, Paysage aux Trois Arbres. Amir Cohen, a nonparty, informed Patrick Blum of Phoenix that he could arrange for the sale of the painting in exchange for a percentage of the subsequent resale price. As a condition of the sale, Mandarin required an appraisal and reports of the painting's condition and prior ownership. Cohen agreed to obtain the information and recommended that defendant Guy Wildenstein, a renowned Gauguin expert, provide the appraisal. In a July 28, 2000 letter to a purported Mandarin intermediary, Michel Reymondin, Wildenstein stated: "You have asked my opinion about the value of two paintings with which I am quite familiar, since at one time they were sold by our firm . . . with regard to [the Painting], this is no. 489 of the *catalogue raisonné* [a catalogue of Gauguin's paintings] published by my grandfather . . . It was part of Mrs. Arthur Lehman's collection . . . This picture was painted in 1892, during the artist's first voyage to Tahiti. Given the rarity of the paintings from this era and its size, I think in the current market it would be worth between 15 and 17 million dollars . . . I hope this has answered your questions."

In an August 10 letter, Thomas Seydoux, the Director of

Christie's Impressionist Paintings Department, stated: "After having carefully examined the painting . . . we would be very honored to be able to present this masterpiece . . . on November 8th, with an estimated price of US\$ 12 million to US\$ 16 million and a reserve [minimum sale] price set at US\$ 12 million."

On or about August 12, Mandarin received the appraisal. The complaint alleges that a sales invoice was issued on August 16 which contained the provenance of the painting and led Mandarin to conclude that Wildenstein once owned the painting, that he had sold it to Mrs. Lehman, and that it was part of a private collection as of the date of the invoice. On or about August 23, Daniel Wildenstein, of the Wildenstein Institute of Paris, certified the painting's authenticity, but made no mention of the defendants' alleged ownership interest in it. On or about August 25, 2000, Mandarin purchased the painting for \$11.3 million, which it wired to Calypso Fine Art Ltd. Calypso then allegedly paid \$9.5 million to Peintures Hermes S.A., which, in turn, transferred \$8.8 million to an account of Allez la France Ltd., in which defendants purportedly had an interest. Mandarin also alleged that at least \$2.3 million was paid to intermediaries in connection with the sale. Christie's tried to sell the painting at its November 8 auction, but received a high bid of only \$9 million, less than the reserve, and Mandarin retained the painting.

Six years later, shortly before the running of the statute of limitations, Mandarin filed this complaint, which contains claims for fraudulent misrepresentation and omission for defendants' failure to disclose their ownership interest and inflation of the appraisal; fraudulent concealment based on defendants' expert status; negligent omission and misrepresentation as a "special relationship of trust or confidence existed between" the parties based on defendants' expertise; breach of the contract to provide an appraisal, as a third-party beneficiary; breach of the duty of good faith and fair dealing in connection with such contract; and unjust enrichment as defendants benefitted by receiving more than the painting's value. Central to each of the six causes of action is a specific allegation that the defendants failed to disclose their ownership interest in the painting, as well as an allegation that the defendants appraised the painting for a substantially higher value than it was worth.

Prior to serving an answer defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). They argued there was no fraud as the appraisal contained a nonactionable opinion, that the unjust enrichment claim was without merit as the Christie's bid of \$9 million was more than the \$8.8 million

defendants allegedly received, and that there was no privity between the parties.

Mandarin responded that the opinion was actionable as it was expressed with knowledge of its falsity, and that defendants were unjustly enriched as they received at least $9.5 million through Peintures, and, upon information and belief, may have received the full sale price.

The court granted the motion in its entirety. Making a factual finding on this pre-answer motion to dismiss, it found that since the record did not establish that defendants knew of Mandarin, and there was no indication that Mandarin would rely on the appraisal, no cause of action for fraudulent misrepresentation was stated. It further found that the fraudulent concealment claim could not be sustained as it required the additional element of a duty to disclose arising out of a fiduciary or similar relation of trust and confidence, which was not satisfied by allegations of defendants' superior knowledge or expertise.

The court also found that Mandarin failed to establish a claim for negligent misrepresentation or omission, as defendants were not in a special position of trust and confidence with Mandarin, their expertise did not per se create a fiduciary relation, there was no contract of privity between the parties, and Mandarin had not even alleged that defendants' conduct evinced an understanding of Mandarin's reliance.

The court further found that Mandarin's failure to disclose its relationship with Reymondin and identify the provision alleged to have been breached, or to plead the provisions of the contract, mandated dismissal of the breach of contract claim. Finally, in dismissing the unjust enrichment claim, the court found that plaintiff was not entitled to rely on the appraisal despite the allegation that it had requested the appraisal in the first instance.

It is axiomatic that on a CPLR 3211 motion to dismiss, the pleading is to be afforded a liberal construction, the facts alleged in the complaint accepted as true, and the plaintiff accorded the benefit of every possible favorable inference (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Where an issue cannot be resolved as a matter of law, and a factual question is presented, the motion to dismiss must be denied (*Condren, Walker & Co., Inc. v Wolf*, 19 AD3d 151, 152 [2005]). "[A] dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Martinez* at 88).

Preliminary to any assessment of the viability of the causes of action is the recognition that the complaint alleges that

Wildenstein, at the time he gave his "opinion," and stated that his firm had "once" sold the painting, had an interest in the ownership of the painting. Nothing in the record contradicts this allegation. There is certainly nothing in the record to establish as a matter of law that the defendants did not have an interest in the painting at the time of the issuance of the "opinion," or of the sale itself. Thus, in reviewing the challenges to the complaint it must be assumed that the defendants had a contemporaneous ownership interest in the painting. Additionally, since the complaint specifically alleges that Cohen recommended Wildenstein to provide the appraisal, after Mandarin requested an appraisal, it should also be assumed that Wildenstein's written statement as to the painting's value was made at Mandarin's request, and that Wildenstein was aware that Mandarin would rely on it.

The majority makes a factual finding that the parties did not know of each other, and that Wildenstein did not know the reason for the appraisal, despite the absence of any documentary evidence for this assertion. The majority also concludes that the appraisal contains no facts which were misstated, despite the allegations in the complaint that Wildenstein, with a present interest in the painting, knowingly overstated the value of the painting without disclosing his interest.

The elements of a fraudulent misrepresentation claim consist of "a misrepresentation or a material omission of fact which was . . . known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party . . . and injury" (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). A claim for fraudulent concealment "requires additionally setting forth that the defendant had a duty to disclose material information" (*Swersky v Dreyer & Traub*, 219 AD2d 321, 326 [1996]). Such a duty arises where a fiduciary or confidential relationship exists between the parties (*see Dembeck v 220 Cent. Park S., LLC*, 33 AD3d 491, 492 [2006]).

It is clear that the first two causes of action for fraudulent misrepresentation are sufficiently pleaded. They allege that Mandarin sought an appraisal before purchasing the painting, that Wildenstein issued an appraisal upon which Mandarin relied, that Wildenstein failed to disclose his ownership interest in the painting, and that his appraisal grossly inflated the value of the painting. Furthermore, the appraisal itself contains the affirmative statement that his firm once sold the painting. Discovery will establish whether Wildenstein had an ownership interest in the painting at the time of the appraisal, but, if he or

his firm did, the representation that he "once" sold the painting was clearly designed to conceal the possibility that he or his firm had a present interest in the painting.

The claim for negligent misrepresentation is likewise sufficiently pleaded. By alleging that the appraisal was prepared at its request, Mandarin claims the existence of a "relationship so close as to approach that of privity" (*Parrott v Coopers & Lybrand*, 95 NY2d 479, 483-484 [2000]). The elements of the cause of action, "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance" (*id.* at 484 [citations omitted]), are gleaned from the allegations that Wildenstein prepared the appraisal for Mandarin's use in determining whether to purchase the painting.

Unlike the circumstances in *Ravenna v Christie's Inc.* (289 AD2d 15 [2001]), upon which the majority relies, it is alleged here that the appraisal was made for a prospective buyer of a painting in which the preparer had an undisclosed interest. In *Ravenna* the court specifically noted that a business relationship had not been created (*id.* at 16). Again, discovery would explore the nature of the relationship, if any, but, at this juncture, it cannot be said as a matter of law that a business relationship did not exist, even if through intermediaries.

Mandarin also pled sufficient facts to establish that it was an intended beneficiary to the appraisal contract and thus its claims for breaches of contract and the implied covenant of good faith and fair dealing should not have been dismissed. A party "asserting third-party beneficiary rights under a contract must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for their benefit and (3) that the benefit to them is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate them if the benefit is lost" (*Mendel v Henry Phipps Plaza W., Inc.*, 6 NY3d 783, 786 [2006] [internal quotation marks omitted]). While the consideration to be rendered for the appraisal is not specified, the complaint nevertheless alleges Wildenstein prepared the appraisal at the request of intermediaries, as a result of Mandarin's initial request, and that Mandarin would rely upon the appraisal in order to buy the painting. If true, Wildenstein's failure to advise of his interest in the painting, or to provide an honest appraisal, would expose him to liability. Thus, the fourth and fifth causes of action are also sufficiently pleaded.

The claim for unjust enrichment should also be sustained. "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972], *cert denied* 414 US 829 [1973]). The majority makes a factual finding that plaintiff had no right to rely on the appraisal, in the absence of any evidence. I submit, respectfully, that the allegations that Wildenstein actually had an interest in a painting which he overvalued, with the knowledge that an unwitting buyer would rely upon it, and that he profited unjustly, sufficiently make out a claim that Wildenstein benefitted inequitably from the transaction, and should return his gain. This is not the juncture at which findings of fact are to be made, particularly since there is no conclusive documentary evidence indicating otherwise (*see Martinez*, 84 NY2d at 88).

A plaintiff is not obligated to supply evidentiary support for his claims when faced with a pre-answer motion to dismiss (*see Salles v Chase Manhattan Bank*, 300 AD2d 226, 228 [2002]). I must part company with the majority's plaint that the record does not support plaintiff's allegations. The record neither proves nor disproves the allegations. The answer to all of the questions posed by the majority would hopefully have been obtained during discovery. In the interim, I believe the allegations of the complaint were sufficient to withstand dismissal.

Finally, I agree with the concurrence to the extent it suggests that if defendant inflated the appraisal knowing that plaintiff would rely on it, and received a monetary benefit from such reliance, a cause of action for unjust enrichment would lie. I disagree, however, with the suggestion that what is alleged is mere nondisclosure. If Wildenstein had an interest in the painting at the time he issued the appraisal, rather than a former interest, as suggested in the appraisal report, his conduct amounted to more than nondisclosure.

Since the record does not establish what the relationships of any of the parties were, or what was known or unknown by any of them, the need for discovery is evident, and the motion to dismiss should be denied. [*See* 17 Misc 3d 1118(A), 2007 NY Slip Op 52059(U).]