### DAVENPORT v. WALKER et al.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

1. PLEADING (§ 217*)—DEMURRER—EFFECT AS OPENING RECORD.

Where, upon demurrer to the answer, the sufficiency of the complaint is attacked in argument, its sufficiency will be first determined.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 540–548; Dec. Dig. § 217.*]

2. MONEY RECEIVED (§ 17*)—PLEADING—SUFFICIENCY.

The complaint, in an action by the receiver of a bank, alleged that the cashier, being indebted to defendants, drew a cashier's check upon the bank for the amount and delivered it to defendants, who received it in payment "with notice and knowledge that the said funds were the funds of the said bank," and that the check was paid by the bank through the clearing house in due course. Held that, while the fact that the check was a cashier's check would not of itself put defendants on notice that the bank's money was being used to pay the cashier's indebtedness, the complaint stated a cause of action for money had and received, the plaintiff not being limited to inferences drawn from the form of the check, but being entitled to show any kind of notice of the ownership of the funds, the quoted allegation not being subject to the construction that the "funds of" the bank were merely those which technically were those of the bank by being deposited in it.

[Ed. Note.—For other cases, see Money Received, Dec. Dig. § 17.*]

3. MONEY RECEIVED (§ 17*)—COMPLAINT—SUFFICIENCY.

Neither was the complaint demurrable as alleging that the check was properly or lawfully paid, the allegation that it was "duly paid" through

---

the clearing house meaning that it was regularly paid in the manner to make it a proper charge against the bank.

[Ed. Note.—For other cases, see Money Received, Dec. Dig. § 17.*]

4. MONEY RECEIVED (§ 1*)—RIGHT OF ACTION.

An action for money had and received will lie whenever one has money which in equity and good conscience belongs to another.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 1; Dec. Dig. § 1.*]

5. MONEY RECEIVED (§ 17*)—ACTIONS—PLEADING—PROOF.

Under an allegation that plaintiff's cashier paid for bonds purchased from defendant with a cashier's check, which defendant received with notice and knowledge that the funds belonged to plaintiff, plaintiff could show either actual or constructive notice that the money received by defendant belonged to the bank, and was not limited to such a showing of notice as might be inferred from the form of the check.

[Ed. Note.—For other cases, see Money Received, Dec. Dig. § 17.*]

6. PLEADING (§ 34*)—CONSTRUCTION—CONSTRUCTION AGAINST PLEADER.

A pleading is no longer construed strictly against the pleader as to matters of form.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 66; Dec. Dig. § 34.*]

7. ELECTION OF REMEDIES (§ 3*)—INCONSISTENT REMEDIES.

If a bank cashier used the bank's funds to pay for bonds purchased by him individually, the bank could either ratify the unauthorized purchase and require the cashier to turn over the bonds, and, if he refused to do so, sue him for their conversion, or could repudiate the purchase and recover the price in the hands of any one receiving it with notice that it belonged to the bank, but its election to pursue one remedy precluded it from following the other.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. §§ 3, 4; Dec. Dig. § 3.*]

8. PLEADING (§ 95*)—REFERENCE FROM ONE DEFENSE TO ANOTHER.

In an action by the receiver of a bank to recover funds of the bank paid to defendant by the cashier on his personal debt for the purchase of bonds, the second defense in the answer *held* to sufficiently identify, by reference to the preceding defense, a claim established by the receiver against the estate of the cashier for the value of securities of the bank converted by the cashier, as including the bonds for which the payment of bank funds was made to defendant, so as to state an election of remedies against a demurrer.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 95.*]

9. ELECTION OF REMEDIES (§ 7*)—ACTS CONSTITUTING.

The establishment of a claim by a bank against the estate of its deceased cashier for the value of bonds of the bank converted by him will preclude a subsequent action by the bank to recover from the seller of the bonds funds of the bank paid to him by the cashier, based on the theory that the purchase was the personal transaction of the cashier, and that the bonds were paid for with the bank's funds, which the seller took with notice of their true ownership.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 12; Dec. Dig. § 7.*]

10. PLEADING (§ 95*)—DEFENSES—CONSTRUCTION.

Each defense must be complete in itself, though material facts previously stated may be incorporated in a defense by reference.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 193; Dec. Dig. § 95.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

11. ELECTION OF REMEDIES (§ 3*)—ACTS CONSTITUTING ELECTION—ACTION.
   An action by a former receiver of a bank against officers and directors
   for damages caused by their negligence in permitting the cashier to pay
   for bonds purchased with the bank's funds was not inconsistent with a
   subsequent action by a receiver of the bank to recover the purchase money
   received by him against the seller of the bonds with notice that it belong-
   ed to the bank.
   [Ed. Note.—For other cases, see Election of Remedies, Dec. Dig. § 3.*]

Appeal from Special Term, Richmond County.

Action by John S. Davenport, as receiver of the Bank of Staten Island, against Norman S. Walker, Jr., and another, doing business as Walker Bros. From an interlocutory judgment for plaintiff, defendants appeal. Affirmed as modified.

Argued before WOODWARD, JENKS, GAYNOR, BURR, and RICH, JJ.

Howard R. Bayne, for appellants.

Nathan D. Stern, for respondent.

BURR, J. The plaintiff demurred to two defenses contained in the answer. Upon the argument the sufficiency of the complaint was attacked. It demands prior consideration. Lewis v. Cook, 150 N. Y. 163, 44 N. E. 778; Baxter v. McDonnell, 154 N. Y. 432, 48 N. E. 816. The complaint alleges that on December 23, 1901, one Otto Ahlmann was indebted to the defendants in a sum exceeding $70,000. An exhibit attached to the complaint shows that the indebtedness arose in connection with the purchase and sale of stocks and bonds, among which were 50 bonds of the Chicago & Alton Railroad Company. It alleges that on that day Ahlmann, then being the cashier of the bank of Staten Island, drew a cashier's check upon said bank for the sum of $40,000 and delivered it to the defendants, who received it in part payment of said indebtedness. It alleges that the amount of the check was duly paid to the defendants by the Bank of Staten Island by payment through the New York Clearing House in due course. It alleges that the said Ahlmann by means of the said cashier's check withdrew from the bank $40,000 of its funds and applied the same in part payment of his indebtedness, and that the defendants accepted the same "with notice and knowledge that the said funds were the funds of the said bank." This is a perfectly good complaint. It may be conceded, in view of Ahlmann's relations to the bank, that the mere fact that the check was a cashier's check would not be sufficient to put the defendants upon notice that funds of the bank were being used to pay his individual debt. Goshen Nat. Bank v. State of New York, 141 N. Y. 379, 36 N. E. 316. But this complaint alleges further that at the time that the defendants applied this $40,000 in part payment of Ahlmann's indebtedness to them they accepted such part payment "with notice and knowledge that the said funds were the funds of the said bank." An action for money had and received may be maintained whenever one has money in his hands belonging to another which in equity and good conscience he ought to pay over to that other. 27 Cyc. 849; Mason v. Prendergast, 120 N. Y. 536, 24 N. E. 806. If the defendants knew

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that Ahlmann was paying his debts with the bank funds, equity and good conscience would forbid them to retain the same. Under this allegation the plaintiff is not limited to any inference that may be drawn from the form of the check, but may prove full and complete notice and knowledge, actual or constructive, that the money which defendants received was money of the bank which Ahlmann had no right to use. The claim that, because the relation of debtor and creditor exists between a bank and its depositor (People v. St. Nicholas Bank, 77 Hun, 159, 28 N. Y. Supp. 407; Met. Nat. Bank v. Loyd, 90 N. Y. 530; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9), the words above quoted simply mean that the check is drawn against funds which are the property of the bank, although subject to draft by the maker of the check, is untenable. Such a construction would be strained and unnatural. So the allegation that the check "was duly paid to the said Walker Bros. by the said Bank of Staten Island by payment through the New York Clearing House in due course" does not mean that it was properly paid or lawfully paid. It simply means that the forms necessary to be observed by the New York Clearing House as conditions precedent to charging the Bank of Staten Island with the amount of a check purporting to be payable by it had been observed. The rule that in matters of form a pleading must be construed strictly against the pleader no longer obtains. Coatsworth v. Lehigh Valley R. Co., 156 N. Y. 451, 51 N. E. 301.

We come, therefore, to the consideration of the demurrer to the third defense, which the court below sustained on the ground that it is insufficient in law. The defendants invoke the rule that when a party has two remedies which are inconsistent he may elect to pursue either, but that having once made his election with full knowledge of the facts, of which election the commencement of a proceeding is sufficient evidence, his right to prosecute the other remedy is forever gone. Morris v. Rexford, 18 N. Y. 552; Bank of Beloit v. Beale, 34 N. Y. 473; Fowler v. Bowery Savings Bank, 113 N. Y. 456, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479; Conrow v. Little, 115 N. Y. 387, 22 N. E. 346, 5 L. R. A. 693; Kirk v. Crystal, 118 App. Div. 32, 103 N. Y. Supp. 17. The complaint in this action seeks to recover the $40,000 paid by Ahlmann to the defendants upon the theory that the money of the bank was used to pay his individual indebtedness arising, among other things, from the purchase for him by the defendants of 50 Chicago & Alton bonds. Upon discovering this, the bank had two remedies. It could ratify the unauthorized purchase by Ahlmann and insist that he turn over to them the 50 bonds purchased with their money, and, if he refused so to do, sue him for the unlawful conversion resulting therefrom; or it could repudiate the whole transaction of purchase and seek to recover its money from Ahlmann or any one in whose hands it could be found who took it with knowledge that it was theirs. It could not have both money and bonds. It could not sue claiming that the bonds were theirs because the money was not, and also sue claiming that the money was theirs, repudiating the ownership of the bonds. Whichever way they elected in the first proceeding to treat the transaction concluded them in any subsequent proceeding.

The learned trial justice states in his opinion that in the proceeding hereinafter referred to it does not appear that the bank claimed title to the bonds through Ahlmann's purchase from the defendants.   If that is so, the decision is right.   If not, we think error was committed. In construing this defense, we must observe the rule that each defense must be complete in itself (Sbarboro v. Health Department, 26 App. Div. 179, 49 N. Y. Supp. 1033), although proper reference to material facts previously stated with the intent to incorporate them therein will be equivalent to restating them (Walsh v. Lispenard Realty Co., 55 Misc. Rep. 400, 106 N. Y. Supp. 570; Garrett v. Wood, 27 App. Div. 314, 50 N. Y. Supp. 950; Stemmerman v. Kelly, 122 App. Div. 669, 107 N. Y. Supp. 379).   The defense demurred to alleges the death of Ahlmann, leaving a will which was duly proved, and that letters testamentary were issued to George Wood, the executor named therein, that the bank by a former receiver presented a claim to Ahlmann's executor, which was rejected and referred under the statute, and that such proceedings were thereafter had, that on July 2, 1906, judgment was entered in favor of said receiver for the principal and interest of said claim.   It further alleges that said claim was for the value of securities and other property, including 121 bonds of the Chicago & Alton Railroad Company, which "was (sic) the property of the said bank and had been converted by said Ahlmann, while cashier of said bank, to his own use"; that said claim "included the fifty bonds, or the proceeds thereof, issued by the Chicago & Alton Railroad Company, delivered as aforesaid to said Ahlmann by these defendants on or about December 23, 1901, upon receiving said cashier's check of $40,000 mentioned in the complaint."   If this were all, it might be doubted whether there was sufficient to identify any portion of the claim made by the receiver with the claim made by the plaintiff here. The words "as aforesaid" relate to nothing previously stated in this defense, and the complaint makes no reference to the delivery of any bonds when the $40,000 check was paid.   But in another portion of the answer pleading this defense, it is alleged that 50 bonds "were bought as aforesaid in the first defense herein, and delivered by these defendants to said Ahlmann as the property of the said bank." Turning now to the allegations of the first defense, we find from these that the defendants on the 14th of October, 1901, bought for Ahlmann 50 refunding bonds of the Chicago & Alton Railroad Company for $44,062.50, for which they received from him on account $4,062.50; that Ahlmann stated that he was really buying said bonds for the Bank of Staten Island, of which bank he was cashier, and that he would subsequently call upon the defendants to take up said bonds for the benefit of the said bank and pay for them in full; that on December 23, 1901, he did call upon defendants and stated that he desired to take up said bonds for the bank and pay for them in full, that he was and for a long time had been cashier of said bank, and was empowered to purchase bonds for said bank and pay for them out of funds of said bank; and that, relying upon his statement, they delivered to him said 50 bonds of the Chicago & Alton Railroad Company, and received from him the cashier's check for $40,000 mentioned and described in the complaint in payment for said bonds, and

for no other purpose whatsoever. It seems, therefore, that the $40,-000 payment to recover which this action was brought is clearly identified with the $40,000 payment which the former receiver claimed was made to purchase 50 Chicago & Alton bonds for the bank, which bonds Ahlmann afterwards converted. The bank did claim title to these bonds through Ahlmann's purchase, and elected, if this defense is true, to treat the bonds as their property. It cannot now claim the amount of the payment made on December 23, 1901, to the defendants, on the ground that the bonds were not purchased for them and were not their property. The demurrer to this defense in the answer should have been overruled.

It remains for us to consider the demurrer to the fourth defense. It is therein alleged that in March, 1905, a former receiver of the bank began an action against the officers and directors and the personal representatives of a deceased officer and director of the bank for damages for failure to exercise that same degree of care and prudence in the execution of their trust that men of common prudence ordinarily exercise in their own affairs. Hun v. Cary, 82 N. Y. 65, 37 Am. Rep. 546. The general negligence complained of was the giving over to Ahlmann of the entire and exclusive management, control, and supervision of the said bank, and its books, records, loans, and assets, continuing him in his office as cashier after they knew that he was dishonest and had stolen the assets of the bank, and omitting, after they knew of his misappropriations and wrongful acts, to take any steps to retrieve the losses or recover the assets so misappropriated. Among the assets enumerated as lost was the sum of $40,000 received by the defendants as the proceeds of the cashier's check as alleged in the complaint. It is claimed by the defendants that this remedy is inconsistent with that sought to be enforced in this action. We fail to see how it is so. The gravamen of that complaint was the negligent conduct of the defendants resulting in loss. Certainly the sum of $40,000 had been lost to the bank at that time, and does not seem yet to have been regained. The loss complained of was not the conversion of the bank's bonds purchased with the check in question; it was the loss of the bank's money by its application to the payment of Ahlmann's individual indebtedness to the defendants. This is precisely what the plaintiff now complains of. Suppose that the receiver had first brought this action against the defendants, but had failed to collect anything upon the judgment recovered therein; would it be any defense to a subsequent action for negligence against the officers and directors of the bank that this action had been brought? Would it not have simply made the evidence of the loss resulting from their negligence more conclusive? If, on the other hand, pending the action against the officers and directors, the bank had collected this sum of $40,000 from the defendants, such collection would have reduced the amount of the damages to be recovered in the other action, but would not have been a bar to the same. The position of the bank is in each case the same. Its claim is that its funds were improperly diverted and stolen. In the one case, it sues the persons into whose hands such funds came with knowledge of the theft; in the other, it

· sues those whose negligence made the theft possible. The demurrer to this defense was properly sustained.

The interlocutory judgment should be modified by reversing so much of the said judgment as sustains plaintiff's demurrer to the third defense set up in the answer, and said demurrer should be overruled; and the said judgment as so modified should be affirmed, without costs to either party as against the other. All concur.