■ AETNA CASUALTY AND SURETY COMPANY, Appellant, v LFO CONSTRUCTION CORP., Respondent, et al., Defendant. [615 NYS2d 389] —Order, Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered February 25, 1993, which denied plaintiff's motion to amend its complaint to assert a fifth cause of action for a declaratory judgment that its surety bonds have been discharged by virtue of the alterations made to the subcontract by LFO and a sixth cause of action for unjust enrichment against LFO for payments made by Aetna to LFO for labor, materials and allocated overhead incorporated into the completion of the subcontract before Aetna became aware that its bonds had been discharged and for partial summary judgment on these additional causes of action, unanimously modified, on the law, only to the extent of granting Aetna's motion to amend its complaint to add the proposed fifth and sixth causes of action and, as so modified, the order is otherwise affirmed, without costs.

Defendant LFO Construction Corp. ("LFO"), an affiliate of the Lefrak Organization, was the general contractor for the Battery Park City project. On August 3, 1981, LFO entered into a subcontract with Westover Technology, Inc. ("Westover") to furnish and install equipment for a computerized submetering, fire alarm, and mechanical alarm system at the project. In connection with this subcontract, on August 25, 1981, plaintiff issued a performance bond in the penal sum of $1.5 million, and a labor and materials bond naming Westover as principal and LFO as obligee.

On August 18, 1982, Westover and LFO entered into "Change Order No. 1" whereby Westover undertook to install the electrical wiring on the project for $2,917,000.

In the first cause of action, seeking all contract balances and retainages held by or due to LFO, it is alleged that after Westover advised plaintiff that it was financially unable to meet payments for labor and materials as they came due, plaintiff made payments of $913,855.29 on the labor and materials bond to complete the subcontract, and as a result was equitably subrogated to all contract balances and amounts held by LFO or due to LFO from the owner of the property.

In the second cause of action, plaintiff seeks a declaration that "Change Order No. 1" was not in fact a change order to the 1981 subcontract, to which the bond obligations applied, but was a separate agreement. Plaintiff alleges that, while Westover recognized that the purported change order was excluded from plaintiff's bond obligations, LFO took the position that the change order was part of the 1981 subcontract and therefore intended to hold plaintiff liable on the performance bond if Westover failed to perform on the work encompassed by the "change order".

The third cause of action seeks a declaration that, if "Change Order No. 1" is deemed to have become part of the 1981 subcontract, then plaintiff is discharged from its bond obligations to LFO by virtue of the alterations made to the subcontract by LFO and Westover.

In the fourth cause of action, plaintiff seeks reformation of the bonds, to the extent that the subcontract was incorporated in them, to exclude any claims made thereunder by virtue of the 1982 change order.

In its answer dated January 17, 1984, LFO admits that it had entered into the 1982 electrical contract with Westover (the "change order") and essentially denies the remainder of plaintiff's allegations.

By decision dated November 12, 1986, Justice Wright granted plaintiff partial summary judgment declaring that the bond issued by plaintiff did not extend to the work undertaken in the 1982 contract, finding that it could not accurately be described as a "change order" relating to the work originally contemplated in the 1981 contract, but was in fact a "radical departure" from the initial agreement. In so ruling, Justice Wright observed that a Westover affiliate (Mansfield Building Systems) recognized that plaintiff's bond did not apply to the "change order".

Plaintiff then served interrogatories in September 1988 and LFO provided its responses in May 1991. On April 24, 1991, plaintiff conducted a deposition of Anthony Scavo, LFO's project manager on the Battery Park City project. The deposition of Westover's chairman, Richard Muffoletto, was received by plaintiff in September 1991.

Based on information received in the depositions and interrogatories, plaintiff moved to amend its complaint in August of 1992, in order to assert proposed fifth and sixth causes of action. The proposed pleading alleges in the fifth cause of action that, from late 1982 through April 1983, LFO commingled required payments against requisitions submitted by Westover for the 1981 submetering contract with payments due under "Change Order No. 1", the effect being to alter plaintiff's obligation under the performance bond with respect to the 1981 contract. Plaintiff seeks a declaration that such commingling effected an alteration in its obligation, and thus discharged it.

In the proposed sixth cause of action, plaintiff claims that the payments it had made had been while it was already discharged on the bond, and since LFO would have been required to make such payments to obtain completion of the Westover subcontract, LFO has been unjustly enriched by the sum of $931,444.30. Plaintiff seeks this amount in damages.

The IAS Court found, *inter alia,* that Aetna, at best, furnishes vague generalities to support its attempt to secure the discharge of its original obligation to assure performance by Westover and has failed to specify in any compelling manner how it was prejudiced by any failure to allocate payments between the 1981 and 1982 agreements. It therefore denied plaintiff's motion, absent sufficient merit in the proposed fifth and sixth causes of action.

Contrary to plaintiff's contention, the IAS Court did not err in requiring that, to effect a discharge, the alteration in

obligation be prejudicial to plaintiff *(see, Becker v Faber,* 280 NY 146, 149; *Matter of Union Indem. Ins. Co. [Solco Plumbing Supply],* 199 AD2d 209). The error was in applying the rule.

Even though LFO made full payment on the 1981 contract, the gist of the proposed fifth cause of action is that if LFO commingled its payments to Westover, there is therefore no way to determine whether continued payments by plaintiff for the 1981 contract were necessitated by LFO's improper allocation of its payments to the 1982 "change order". It is therefore irrelevant with respect to plaintiff's altered obligation that LFO may have made full payment to Westover.

Although the authorities submitted by the parties are concerned only with the general rules for discharging a surety when its obligation is altered without its consent, the *treatment* of contractual obligations as herein, whereby the obligation is *implicitly* changed, should be no different from the usual discharge situation where the *terms* of the obligation are altered *explicitly.*

However, in finding a lack of merit to the claim, IAS erroneously applied a summary judgment standard rather than the lesser standard applicable to CPLR 3025 (b) amendments *(see, Baskin & Sears v Lyons,* 188 AD2d 307, 308 [1st Dept 1992], citing *Daniels v Empire-Orr, Inc.,* 151 AD2d 370).

So, too, there was merit in the claim for unjust enrichment, regardless of the fact that LFO had not been the one to ask for plaintiff's payments, inasmuch as a surety may recover for its payments upon learning that its liability had been discharged *(see, Hurley v Pittsburgh Plate Glass Co.,* 178 App Div 927, *affd* 226 NY 606). The unjust enrichment claim does not require that the party enriched take an active role in obtaining the benefit.

As stated in *Daniels (supra,* at 372), the policy of this Court has always been consistent with the rule that, in the absence of prejudice or unfair surprise, requests for leave to amend should be granted freely.

Contrary to defendant's arguments, plaintiff did not delay in seeking amendment, as such relief was sought a reasonable time after discovery was concluded. The one year delay does not compare with the five years in *Clayton Webster Corp. v Bozell & Jacobs* (167 AD2d 145 [no merit as well]) or the six years in *Medical Facilities v Pryke* (191 AD2d 238 [again, no merit as well]).

Also, unlike the situation in *Clayton,* where there was a sudden change of theory and extensive discovery and trial

preparation based upon the original theory, here defendant had long been aware of plaintiff's concern regarding the non-allocation of payments, and any discovery relevant to the supposedly new theory remained entirely in defendant's hands; any discovery to be required in the future would likely be needed, not by defendants, but by the plaintiff surety. Even if required by defendants, such need would not amount to prejudice (Smith v Industrial Leasing Corp., 124 AD2d 413).

Clearly, plaintiff, while surmising that misallocations existed, could not have had proof thereof sufficient to support the merit of its proposed amendment before obtaining the depositions and interrogatory responses in 1991 (cf., L & L Excavating Corp. v Abcon Assocs., 191 AD2d 539, 540, lv denied 82 NY2d 659).

Thus, since mere lateness alone is not a barrier to amendment (Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959), and defendant could not demonstrate prejudice, and the proposed fifth and sixth causes of action had merit, leave to amend the complaint should have been granted.

However, summary judgment was properly denied since there is a triable issue of fact as to whether the allocations were designated, as Anthony Scavo testified, although such designation did not appear on the face of some of the checks. Concur—Murphy, P. J., Wallach, Kupferman and Williams, JJ.