■ GEORGIA MALONE & COMPANY, INC., Appellant, v RALPH RIEDER et al., Respondents, et al., Defendant. [926 NYS2d 494]—

Plaintiff Georgia Malone & Company, Inc. (MaloneCo) is a licensed real estate brokerage and consulting firm that provides its clients with information with respect to the purchase and sale of properties not yet on the market. MaloneCo and defendant CenterRock Realty, LLC, by its managing member, Ralph Rieder (Ralph), entered into a confidentiality agreement in November 2007. That agreement pertained to CenterRock's potential purchase of a group of buildings in Midtown Manhattan and required CenterRock to treat all information provided to it by MaloneCo as confidential. In addition, the agreement also required CenterRock to pay MaloneCo a commission fee of 1.25% of the sale price of the property. The agreement was signed by "Ralph Rieder of CenterRock Realty LLC" and MaloneCo. The purchaser is defined as "CenterRock Co" and its affiliates, and the signature line denotes CenterRock Realty as the "company," with Ralph Rieder as the "contact name."

After the agreement was signed, MaloneCo provided CenterRock, Ralph, Elie Rieder (Elie), an officer of CenterRock, and defendant-respondent Kenneth Gliedman, an attorney for CenterRock, with confidential information concerning financial projections, due diligence materials, and other information and advice relating to all aspects of the subject property and potential transaction. In December 2007, CenterRock entered into a contract of sale with the property owners to purchase the property for $70,000,000. CenterRock had a 25-day period to perform due diligence investigations, during which time it could terminate the deal without penalty. The property owners agreed to extend the due diligence period an additional 21 days, to January 25, 2008. During the due diligence period, MaloneCo

continued to collect, create and provide CenterRock, Ralph, and Elie with confidential information regarding the property. On January 25, 2008, the final day of the due diligence period, CenterRock terminated the transaction.

MaloneCo alleges that it provided valuable, confidential information to CenterRock, Ralph, and Elie, who then sold the information to defendants-respondents Rosewood Realty Group Inc., a fellow brokerage firm, and Aaron Jungreis, a broker at Rosewood, for $150,000. MaloneCo further contends that from about November 2007 through January 2008, Ralph continually affirmed CenterRock's interest in completing the transaction. The complaint specifically alleges that Ralph sent an e-mail to MaloneCo stating that he and Elie were working together to complete the transaction. However, during this time Ralph allegedly delayed the negotiations and tender of the down payment in order to provide himself, CenterRock, and Elie with more time to secure an equity partner to participate in the transaction. It is further alleged that shortly after CenterRock terminated the contract, Elie sold MaloneCo's confidential information to Rosewood and Jungreis.

MaloneCo also contends that Rosewood and Jungreis then provided this information to its client, who in turn purchased the property resulting in a sizeable commission for Rosewood and Jungreis.[1] According to the complaint, Ralph and Elie benefitted, separate and apart from any benefit to Center-Rock, by profiting from the ultimate sale of the property, in addition to the $150,000 received for selling the confidential information. MaloneCo further alleges that Gliedman was the attorney for both CenterRock and the ultimate purchaser of the subject property, with his only benefit being collection of his fees. Defendant-respondent Fieldstone Properties, LLC (FSP), a corporation in which Ralph and Elie are officers, also is alleged to have unjustly benefitted from MaloneCo's work product.

MaloneCo commenced this action alleging breach of contract, breach of confidentiality, quantum meruit, and unjust enrichment against Ralph Rieder individually, and unjust enrichment against the remaining defendants-respondents. Defendants-respondents moved to dismiss the complaint for failure to state a cause of action and the court granted the motions in their entirety.

The motion court properly dismissed the contract claims

---

1. The complaint does not allege that Rosewood and Jungreis knew that MaloneCo had not been compensated by CenterRock or the Rieders.

against Ralph, individually.[2] It is well established that officers or agents of a company are not personally liable on a contract if they do not purport to bind themselves individually (*PNC Capital Recovery v Mechanical Parking Sys.*, 283 AD2d 268, 270 [2001], *lv dismissed* 96 NY2d 937 [2001], *appeal dismissed* 98 NY2d 763 [2002]; *see also Salzman Sign Co. v Beck*, 10 NY2d 63, 67 [1961]). Ralph is listed only as the "contact" and Center-Rock is listed as the "company" on the signature block of the agreement. The agreement specifically states it is between "Ralph Rieder of CenterRock" and MaloneCo. Indeed, Ralph only signed the contract once, rather than signing twice, which is the general practice when an individual wishes to be personally bound (*Salzman Sign Co.*, 10 NY2d at 67).

The unjust enrichment claim against Ralph and Elie, in their individual capacities, should not have been dismissed. Unjust enrichment is a quasi contract theory of recovery, and "is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned" (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009]). The plaintiff must show that the other party was enriched, at plaintiff's expense, and that "it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011] [internal quotation marks and citation omitted]). Further, although privity is not required for an unjust enrichment claim (*Sperry v Crompton Corp.*, 8 NY3d 204, 215 [2007]), a claim will not be supported unless there is a connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part (*Mandarin Trading*, 16 NY3d at 182).

Prior cases from this Court and the other Departments have held that an unjust enrichment claim can only be sustained if the services were performed at the defendant's behest (*Ehrlich v Froehlich*, 72 AD3d 1010, 1011 [2010]; *Seneca Pipe & Paving Co., Inc. v South Seneca Cent. School Dist.*, 63 AD3d 1556 [2009]; *Joan Hansen & Co. v Everlast World's Boxing Headquarters Corp.*, 296 AD2d 103, 108 [2002]; *Kagan v K-Tel Entertainment*, 172 AD2d 375, 376 [1991]). The Court of Appeals in *Mandarin Trading* held that the plaintiff was unable to establish an unjust enrichment claim where the "pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement" (*Mandarin Trading*, 16 NY3d at 182). The Court did not discuss the "behest" language in

---

**2.** The motion court denied CenterRock's motion to dismiss in its entirety and CenterRock is not a party to this appeal.

*Kagan* and its progeny. However, there was no reason for the Court to do so because there was no claim of a contract between the plaintiff and the defendant, nor was there a claim of any direct contact such that the plaintiff could have acted at the defendant's behest. In any event, even under the language of *Mandarin Trading*, the unjust enrichment claim survives against Elie and Ralph.

MaloneCo contends that Ralph personally affirmed his, CenterRock's, and Elie's interest in completing the transaction and assured MaloneCo that it would receive its commission, even if the deal was not completed. Based on these assurances, MaloneCo continued to collect and provide Ralph, Elie, and CenterRock with the confidential information. Thus, MaloneCo has sufficiently pleaded that there was direct contact and a relationship with Ralph and Elie that could have caused reliance or inducement (*cf. Mandarin Trading*, 16 NY3d at 182-183).

In contrast, no such allegations exist as to FSP, Gliedman, Rosewood, and Jungreis. MaloneCo dealt solely with Center-Rock, Ralph, and Elie. It is not enough, as the dissent suggests, that CenterRock, Ralph, and Elie had a connection with the remaining defendants-respondents. MaloneCo does not allege that it relied upon any statements or actions of FSP, Gliedman, Rosewood or Jungreis, that those defendants acted in any way to induce MaloneCo to provide the confidential information, in the first instance, to CenterRock, Ralph, and Elie, or even that those defendants knew MaloneCo had not been paid. It also is not sufficient, as the dissent contends, to merely show that FSP, Gliedman, Rosewood and Jungreis were aware of MaloneCo's existence. A mere awareness standard would result in liability for anyone who simply knew of the plaintiff's existence. Similarly, the dissent also incorrectly contends that an unjust enrichment claim can exist solely because defendants may have profited, in one form or another, from plaintiff's work. Such a broad reading improperly expands the claim of unjust enrichment, absent any contention that defendants induced plaintiff to do the work. It is this lack of reliance or inducement that is fatal to the unjust enrichment claim against the third parties, and not merely the lack of behest language, as the dissent suggests in its opening paragraph.

Contrary to the dissent's suggestion, we see no contradiction between our holding and the language of the Court of Appeals in *Mandarin Trading*, nor do we see any internal inconsistency in the Court of Appeals' opinion. That case noted that an unjust enrichment claim was deficient without an allegation of a relationship that caused reliance or inducement. The brief refer-

ence to one party's "awareness" of the other party's existence in *Mandarin Trading* was used simply to highlight the fact that, in that case, the two parties had no connection whatsoever and thus their relationship was "too attenuated" (*Mandarin Trading*, 16 NY3d at 182). It was not intended, as the dissent suggests, to create an entirely new pleading rule, overruling existing Appellate Division precedent. The dissent's response to *Kagan* and its progeny is to announce that those cases were overruled by the Court of Appeals in *Sperry* and *Mandarin Trading*. The holding in *Sperry* stated that privity is not required (8 NY3d at 215), a principle which is not in dispute here. However, the dissent fails to adequately explain why the Court of Appeals, in either case, would have overruled controlling precedent from this Department, as well as the other Departments, without a clear indication that it was doing so.[3]

Finally, the dissent continues to maintain, despite the clear language to the contrary in this opinion, that we are requiring privity. Requiring plaintiff to plead facts from which it can be inferred that there was a relationship that involved reliance or inducement is not the same as requiring privity. We are not, as the dissent contends, applying too high a standard for a CPLR 3211 motion. Nor are we requiring plaintiff to plead the minutia of its unjust enrichment claim. Rather, we are properly requiring MaloneCo to plead facts that are within its knowledge, and from which a relationship that caused reliance or inducement could be inferred.

To the extent that MaloneCo asserts an action in quantum meruit against Ralph individually, it was properly dismissed. In order to establish a quantum meruit claim, plaintiff must show "the performance of services in good faith, acceptance of the services by the person to whom they are rendered, an expectation of compensation therefor, and the reasonable value of the services" (*Freedman v Pearlman*, 271 AD2d 301, 304 [2000]). Here, there is no allegation that the services performed by MaloneCo were requested by Ralph or performed on his individual behalf.

Denial of MaloneCo's motion to renew also was proper as it

---

**3.** The dissent's contention that we are requiring the Court of Appeals to name every case it is overturning is a misreading of this majority opinion. It is worth noting that neither the briefs filed in the Court of Appeals in *Mandarin Trading,* nor the opinion itself focuses on the precedents we are citing here, and thus we adhere to our position that *Mandarin Trading* did not necessarily overrule those cases. In any event, the difference between our view and that of the dissent turns on the interpretation of a few sentences in *Mandarin Trading*, which ultimately resulted in dismissal of the unjust enrichment claim.

did not submit any new material demonstrating Ralph Rieder's intent to be personally bound under the contract (*see* CPLR 2221 [e] [2]). Concur—Friedman, Catterson and Richter, JJ.

Saxe, J.P., and Acosta, J., dissent in part in a memorandum by Acosta, J., as follows: I respectfully dissent because I believe that my colleagues are in error and ignore clear Court of Appeals precedent in upholding the dismissal of the unjust enrichment claims against Fieldstone Properties, LLC (FSP), Gliedman, Rosewood and Jungreis. Specifically, while the majority would require that plaintiff plead that the property be provided in the first instance at the behest of the defendants, I believe that it was sufficient that plaintiff alleged that defendants *knew* at all times that they were using information that had been wrongfully obtained by the individuals that sold it to them.

It is well established that to successfully plead unjust enrichment "[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011] [internal quotation marks omitted]; *see also Wiener v Lazard Freres & Co.*, 241 AD2d 114, 119 [1998] ["(a) cause of action for unjust enrichment is stated where plaintiffs have properly asserted that a benefit was bestowed . . . by plaintiffs and that defendants will obtain such benefit without adequately compensating plaintiffs therefor" (internal quotation marks omitted)]). A claim for unjust enrichment "is undoubtedly equitable and depends upon *broad* considerations of equity and justice" (*Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972], *cert denied* 414 US 829 [1973] [emphasis added]).[1] It is "[d]uty, and not a promise or agreement or intention of the person sought to be charged, [that] defines it" (*Bradkin*, 26 NY2d at 197, quoting *Miller v Schloss*, 218 NY 400, 407 [1916]). Where a plaintiff's property is wrongfully misappropriated by a third party and given to a defendant, the defendant who receives the misappropriated property has a duty to return it to the plaintiff and

---

1. As the Court of Appeals has explained: "A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because *the acts of* the parties or *others* have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another." (*Bradkin v Leverton*, 26 NY2d 192, 197 [1970] [emphasis added], quoting *Miller v Schloss*, 218 NY 400, 407 [1916]).

may be compelled on equitable grounds to compensate the plaintiff (*see Carriafielio-Diehl & Assoc., Inc. v D&M Elec. Contr., Inc.*, 12 AD3d 478, 479 [2004]; *Wolf v National Council of Young Israel*, 264 AD2d 416, 417 [1999]; *Nakamura v Fujii*, 253 AD2d 387, 390 [1998]; *Cohn v Rothman-Goodman Mgt. Corp.*, 155 AD2d 579, 581 [1989]). In order to adequately plead an unjust enrichment claim there must be allegations of a connection between the plaintiff and the defendant that is not too attenuated; that is, the parties must have something akin to specific knowledge of one another's existence (*see Mandarin Trading*, 16 NY3d at 182 ["Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated"], citing *Sperry v Crompton Corp.*, 8 NY3d 204, 215 [2007]; *see also* 26 Lord, Williston on Contracts § 68:5 [4th ed] [noting that one of the elements of an unjust enrichment claim is "an *appreciation* or *knowledge* by the defendant of the benefit" (emphasis added)]).

Before *Sperry*, there was a split of authority in New York regarding the extent to which parties needed to be in privity with one another to state a claim for unjust enrichment (*see e.g.* NY PJI 4:2, Comment ["There is a split of authority as to whether privity is required in a claim seeking damages for unjust enrichment"]; *Bildstein v MasterCard Intl., Inc.*, 2005 WL 1324972, *5, 2005 US Dist LEXIS 10763, *15 [SD NY 2005] ["Whether New York law imposes a nexus requirement to state a claim for unjust enrichment is unsettled"]). For example, one case in this Department essentially discarded the privity requirement (*see e.g. Cox v Microsoft Corp.*, 8 AD3d 39, 40 [2004]), while another line of cases in this Department held that the parties needed to be in direct privity with one another to plead unjust enrichment (*see e.g. Joan Hansen & Co. v Everlast World's Boxing Headquarters Corp.*, 296 AD2d 103, 108 [2002], quoting *Kagan v K-Tel Entertainment*, 172 AD2d 375, 376 [1991]).[2] In *Sperry* and *Mandarin Trading,* I believe that the Court of Appeals resolved this split and staked out a middle ground between the two different schools of thought. Indeed, after *Sperry* and *Mandarin Trading*, a party is now allowed to bring a claim for unjust enrichment under a loosened privity standard. Where a party bringing such a claim pleads that the other party had knowledge or awareness of its existence, the claim should not be dismissed for lack of privity.

In *Sperry*, the Second Department affirmed Supreme Court's

---

**2.** There was also a division among the federal courts applying New York Law in diversity actions, as noted in *Bildstein* (2005 WL 1324972, *5, 2005 US Dist LEXIS 10763, *15).

decision dismissing Sperry's claim for unjust enrichment on the ground that plaintiff was not in privity with the defendants (26 AD3d at 489). In so doing, the Second Department noted its disagreement with this Department's decision in *Cox v Microsoft Corp.* (8 AD3d 39, 40 [2004]). It also cited, inter alia, this Department's decision in *Kagan* (172 AD2d at 376) to support its narrow view of privity (26 AD3d at 489). Notably, some of the cases cited by the Second Department in *Sperry* adopted the element being advanced by the majority here—namely, that services be performed at the defendant's "behest" (*see e.g. Outrigger Constr. Co. v Bank Leumi Trust Co. of N.Y.*, 240 AD2d 382, 384 [1997], *lv denied* 91 NY2d 807 [1998]). The Court of Appeals affirmed the Second Department's decision; however, the Court "agree[d] with Sperry that a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment" (*Sperry*, 8 NY3d at 215).[3] In light of the fact that the Court of Appeals saw fit to lay out an alternative rationale from the one articulated by the Second Department and that the Court did not adopt the "behest" requirement in the various opinions cited by the Second Department's opinion, I believe that the Court of Appeals has overruled the line of cases adding the "behest" requirement as an element of unjust enrichment (*see e.g. Joan Hansen & Co.*, 296 AD2d 108, quoting *Kagan*, 172 AD2d at 376).[4] I also believe that *Cox* (8 AD3d 39) is no longer good law.

Contrary to the majority's position, to plead unjust enrichment, there is no requirement that the property be provided in

---

**3.** The majority's claim that the Court of Appeals in *Mandarin Trading* did not discuss the "behest" requirement in *Kagan* because the requirement did not apply in that case is perplexing. Of course, such language would have had direct application in that case. It could certainly have been used as the basis for denying the plaintiff's claim. The Court of Appeals could well have adopted the general rule articulated by the majority and applied it to the facts in *Mandarin Trading*. Yet, the Court chose not to do so. I believe that the Court of Appeals' unwillingness to apply the "behest" requirement in *Mandarin Trading* and *Sperry* is more consistent with my view—that the "behest" requirement is no longer good law—than with the majority's position. In short, if the Court believed that the "behest" language was good law, it would have said so, even if it chose not to apply it.

**4.** The majority justifies its defense of *Kagan* on the ground that the Court of Appeals did not give a "clear indication that it was [overruling controlling precedent from this Department]." I believe, however, that Judge Jones' opinion in *Mandarin Trading* was crystal clear in rejecting the behest requirement. The Court of Appeals does not have to name every case that it is overturning; it merely has to articulate a new rule that is logically inconsistent with this Court's prior precedent.

the first instance at the behest of the defendant[5] (*see Monex Fin. Servs., Ltd. v Dynamic Currency Conversion, Inc.*, 62 AD3d 675, 676 [2009] ["(T)he complaint sufficiently pleaded a cause of action sounding in unjust enrichment. The latter cause of action did not plead a quantum meruit theory; therefore, the plaintiffs were not required to plead that they performed services for the defendants" (citations omitted)];[6] *Aetna Cas. & Sur. Co. v LFO Constr. Corp.*, 207 AD2d 274, 277 [1994] ["The unjust enrichment claim does not require that the party enriched take an active role in obtaining the benefit"]; *see also T.D. Bank, N.A. v JP Morgan Chase Bank, N.A*, 2010 WL 4038826, \*5, 2010 US Dist LEXIS 109471, \*19-20 [ED NY 2010] ["The claims for restitution asserted by Chase require proof of no other, independent relationship between the parties . . . Accordingly, Chase's failure to allege privity or direct dealings between itself and Kahan does not defeat its claims for . . . unjust enrichment"]; *Manufacturers Hanover Trust Co. v Chemical Bank*, 160 AD2d 113, 117 [1990], *lv denied* 77 NY2d 803 [1991] [noting that "(i)t does not matter whether the benefit is directly or indirectly conveyed" in addressing an unjust enrichment claim where the parties had direct contact with one another]; *Dreieck Finanz AG v Sun*, 1989 WL 96626, \*4, 1989 US Dist LEXIS 9623, \*13 [SD NY 1989] [in applying New York law to

---

**5.** A cause of action for unjust enrichment has traditionally been understood to reach situations beyond the scope of a claim brought for quantum meruit. Unsurprisingly, the case cited by *Kagan* in support of the "behest" element was an action for quantum meruit (*see Citrin v Columbia Broadcasting Sys.*, 29 AD2d 740 [1968]). The majority's insistence on limiting unjust enrichment claims to those where the benefit was conferred at the behest of the defendant, after the Court of Appeals did away with that requirement in *Sperry*, virtually collapses the distinction between claims for quantum meruit and those for unjust enrichment. Troublingly, by limiting the scope of unjust enrichment to such a significant degree, the majority would preclude a party from recovering for, inter alia, a mistake. In so doing, the majority runs roughshod over well-established principles of American law, the origins of which can be traced to Roman times (*see* Corbin, *Quasi-Contractual Obligations*, 21 Yale LJ 533, 543 [1912] ["Where money is paid under the mistaken belief that it was due, when in fact nothing was due, an action will lie to recover it. This was true also under the Roman law and it is true under all the civil codes based on the Roman law"]). Moreover, the majority is adding an element to the unjust enrichment cause of action that (1) is nowhere to be found in the Court of Appeals precedents and (2) cannot be reconciled with existing precedent (*see Mandarin Trading*, 16 NY3d at 182 [articulating three elements of an unjust enrichment claim, none of which included a requirement that the benefit be conferred at the defendant's "behest"]).

**6.** Notably, in arriving at the same conclusion that I have reached respecting the relationship between quantum meruit and unjust enrichment, the Second Department rejected Supreme Court's application of *Kagan* in an action for unjust enrichment (62 AD3d at 676).

adjudicate an attachment claim based on an unjust enrichment theory where some of the parties knew of each other, the District Court noted, "(n)or is it necessary for plaintiff and defendant to have had direct dealings with one another"]).[7] It was sufficient that plaintiff alleged that defendants *knew* at all times that they were using for their own benefit information that had been wrongfully obtained by the very individuals that sold it to them at a significant[8] discount (*Mandarin Trading*, 16 NY3d at 182 ["Mandarin's unjust enrichment claim fails for the same deficiency as its other claims—the lack of allegations that would indicate a relationship between the parties, *or at least an awareness* by Wildenstein of Mandarin's existence" (emphasis added)]; *Davenport v Walker*, 132 App Div 96 [1909];[9] *see also Mason v Prendergast*, 120 NY 536, 536 [1890] [holding that where a person that has a specific fund belonging to another, "who is entitled thereto on demand, delivers the money, without the consent of the owner, to a third person, and the latter refuses to pay it over on demand, an action . . . is maintainable against him, and for the purpose of relief it is not necessary to join as plaintiff the one who made the delivery"]; *RenerGlobe, Inc. v*

---

**7.** The facts of this case are more fully elaborated in *Dreieck Finanz AG v Sun*, 1990 WL 11537, 1990 US Dist LEXIS 1438 [SD NY 1990].

**8.** The majority maintains that my standard would "expand[ ] the claim of unjust enrichment." On the contrary, the majority's reading would narrow the claim in a way that countless federal and state courts have rejected (*see* 26 Lord, Williston on Contracts § 68:5 [4th ed]).

**9.** In *Davenport*, the plaintiff John S. Davenport, as receiver of the Bank of Staten Island, brought an unjust enrichment action against defendants Norman S. Walker, Jr., and another, doing business as Walker Bros. The complaint alleged that Ahlmann, the cashier of the Bank of Staten Island, drew a cashier's check upon the bank and delivered it to the defendants, who received it in part payment of his indebtedness (132 App Div at 98). Ahlmann lacked the bank's approval to take such action. The complaint further alleged that defendants accepted the check that Alhmann tendered "with notice and knowledge that the said funds were the funds of the said bank" (*id.* [internal quotation marks omitted]). The Court allowed the action to proceed, holding: "It may be conceded, in view of Ahlmann's relations to the bank, that the mere fact that the check was a cashier's check would not be sufficient to put the defendants upon notice that funds of the bank were being used to pay his individual debt. But this complaint alleges further that at the time that the defendants applied this $40,000 in part payment of Ahlmann's indebtedness to them they accepted such part payment 'with notice and knowledge that the said funds were the funds of the said bank.' . . . If the defendants *knew* that Ahlmann was paying his debts with the bank funds, equity and good conscience would forbid them to retain the same. Under this allegation the plaintiff is not limited to any inference that may be drawn from the form of the check, but may prove full and complete notice and knowledge, actual or constructive, that the money which defendants received was money of the bank which Ahlmann had no right to use" (*id.* [emphasis added and citations omitted]).

*Northeast Biofuels, LLC*, 24 Misc 3d 1212[A], 2009 NY Slip Op 51430[U] [2009] [upholding a complaint alleging that the new owners of a facility received valuable permits and contracts as a result of the plaintiff's work on behalf of the previous owner, and that it would be unjust and inequitable for the new owner and operators of the facility to retain such services and benefits without compensating the plaintiff]). The language in *Mandarin Trading* that "the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement" focused on the nature of the enrichment conferred upon the defendant, that is, the "equity" of the enrichment (16 NY3d at 182). That language did not address the necessary nexus between the parties.[10] The majority's interpretation of the "reliance" or "inducement" language in *Mandarin Trading* essentially transforms the language in the preceding paragraph, establishing "awareness" as a sufficient basis to state a cause of action (*id.*), into mere surplusage.[11] Judge Jones' opinion should not be read to include purposeless phrases that serve as nothing more than mere ornamentation. Moreover, I do not believe that the Court of Appeals was so careless as to write what would amount to, under the majority's interpretation, an internally inconsistent opinion.[12] Accordingly, I reject the majority's use of the "reliance" or "inducement" language in *Mandarin Trading* to reintroduce what amounts to a direct privity requirement to plead a cause of action for unjust enrichment.

Here, plaintiff factually and pointedly alleges, in the absence of discovery, that defendants misappropriated its confidential

**10.** Indeed, the Court of Appeals language in *Mandarin Trading* echoes the language of this Court's majority opinion in *Mandarin Trading* (65 AD3d 448 [2009], *affd* 16 NY3d 173 [2011]). Notably, the majority quoted *Paramount Film Distrib. Corp.* (30 NY2d at 421), for the proposition that "[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Mandarin Trading*, 65 AD3d at 451). I believe that the majority's link between the lack of reliance and inducement on the part of Mandarin and the "equity" requirement of an unjust enrichment claim supports my view that the language respecting "reliance or inducement" in the Court of Appeals opinion (16 NY3d at 182) was similarly tied to the "equity" requirement—and not the "privity" requirement, as the majority maintains.

**11.** Frankly, I fail to understand how such a requirement could be met without also requiring that the parties have a direct relationship with one another—something the Court of Appeals has said in *Mandarin Trading* is unnecessary. To wit, the interaction that is required to cause a person to rely upon another person or induce a person to take some action necessitates more than mere awareness of the other parties' existence.

**12.** That is, I do not believe that Judge Jones' opinion suffers from any internal inconsistency. Rather, I believe that the majority interprets his opinion in a way that makes it internally inconsistent.

information and benefitted from its property. Specifically, it alleges that it had provided valuable, confidential information to CenterRock and Ralph Rieder, and that Rieder and his affiliated defendants wrongfully sold the information to defendants Rosewood and Jungreis, who in turn used it to obtain a sizeable commission. Plaintiff further alleges in its complaint that "defendants Rieder, CenterRock, Elie, Gliedman, FSP, Rosewood and Jungreis *knew at all times* that [plaintiff] had performed the aforementioned work, labor and services and had supplied the aforesaid information with the expectation that [plaintiff] would be compensated therefor[ ] in the event that an agreement was reached to purchase the Property" (emphasis added).[13] Because defendants allegedly knew of the benefit that plaintiff conferred upon them, the connection between the parties is not too attenuated (*cf. Mandarin Trading*, 16 NY3d at 182). Indeed, unlike in *Mandarin Trading*, the parties here were not total strangers to one another. Assuming the truth of plaintiff's assertions as we must on a motion to dismiss (*see Fischbach & Moore v Howell Co.*, 240 AD2d 157 [1997]), defendants should not be able to profit from what they allegedly knew to be the wrongful dissemination of plaintiff's confidential proprietary information, while plaintiff receives nothing for its work and valuable work product[14] (*cf. Joan Briton, Inc.*, 36 AD2d at 465-466 ["The defendant deRham was not merely the innocent recipient of an unsolicited gift. It is indicated that she was intimately involved in every stage of the arrangements, and having benefited therefrom, ought without any doubt also be liable to the plaintiff for what she received"]).[15]

**13.** The majority seemingly misunderstands the nature of plaintiff's claim, as plaintiff has alleged more than that it was on the unfortunate end of a business deal that may have involved some unsavory parties.

**14.** The contract between CenterRock and Georgia Malone & Company, Inc. (MaloneCo) obligates the former to pay the latter a commission of 1.25% of the purchase price of a building procured using MaloneCo's information. Rosewood and Jungreis are alleged to have received MaloneCo's confidential information for $150,000. Accepting the alleged ultimate purchase price of $68,500,000 as true, MaloneCo would have been paid $856,250 for its information had it contracted directly with Rosewood and Jungreis. This represents a benefit (i.e., a discount) of $706,250 to Rosewood and Jungreis for MaloneCo's information. Such a windfall to defendants who knowingly acquired misappropriated property should not be given legal sanction (*see Joan Briton, Inc. v Streuber*, 36 AD2d 464, 466 [1971], *affd* 30 NY2d 551 [1972] ["A windfall creates a chilling effect"]).

**15.** There was a dissent at the Appellate Division in *Joan Briton, Inc.* Notably, the dissent did not disagree with the majority position respecting privity (*see* 36 AD2d at 467 ["if the defendant has obtained a (benefit) from a third person which should have gone to the plaintiff, it may be recovered on this

Saying that these allegations are "conclusory" does not make it so, particularly in the context of a glaring misappropriation of plaintiff's property. The majority wants to raise the CPLR 3211 bar by requiring, in the absence of discovery, that plaintiff not simply allege its claim, but support it with evidence as well. At this stage of the action, however, the information that would satisfy the majority is generally within the knowledge of the defendants alleged to have misappropriated the property. Accordingly, it is extremely unfair and improper, in the context of a CPLR 3211 motion, where "the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994], quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]), to require that plaintiff plead the minutia of the unjust enrichment claim (*see Suffolk County Water Auth. v Dow Chem. Co.*, 30 Misc 3d 1202[A], 2010 NY Slip Op 52243[U], *4 [2010] ["While much of what (plaintiff) has stated may need to be demonstrated with specific information . . . such will be done through the discovery process. . . . However, as set forth, the complaint places the movants on notice of the conduct . . . with which it charges them; it gives notice of the manner in which some of the evidence exists; it sets forth the method by which the harm . . . assertedly occurred; and it sets forth its basis for . . . damages. This does not mean such can be proved; however, it is sufficient to satisfy the requirements of CPLR § 3211 (a) (7)"]; *see also* CPLR 3211 [d]). Plaintiff should be entitled to seek recovery for the unjust enrichment of those who knowingly and wrongfully misappropriated its property as well as those who benefitted from property that they knew came into their hands as a result of the wrongful action of a third party.[16]

Finally, I believe there are strong prudential reasons for rejecting the majority's attempt to reintroduce a heightened

---

theory"]), which is consistent with the view articulated in this dissent. Rather, the dissent's disagreement with the majority was related to the wrongfulness of the plaintiff's actions (*id.* at 466-467 ["There is not even a contention, much less a suggestion, that this defendant knew or had reason to suspect that (the codefendant) would not pay according to his undertaking. Nor is there any suggestion that she would have undertaken or could afford the project absent his agreement to be responsible"]). Here, the complaint alleges that the various parties took actions that they knew would ultimately deprive MaloneCo of the benefit of its hard-earned commission. Such actions are wrongful.

**16.** Contrary to the majority's assertion, the standard I am proposing would not "result in liability for anyone who simply knew of the plaintiff's existence." My standard would only result in liability when a party was enriched and had awareness that the other party was conferring a benefit upon it that in equity and good conscience it could not retain.

privity requirement (*cf.* Perillo, *Restitution in a Contractual Context*, 73 Colum L Rev 1208, 1211 [1973] [describing privity as an "unintelligible" requirement "in a context where liability may be thrust upon the defendant by a stranger"]). As such, plaintiff's fourth cause of action should be reinstated. If plaintiff prevails, it should be entitled to obtain restitution for the full amount (i.e., $750,000) that it alleges it would have received had the parties not misappropriated its property.