■ Soldiers', Sailors', Marines' and Airmen's Club, Inc., Appellant, v The Carlton Regency Corp., Defendant and Third-Party Plaintiff. James Conforti, III, et al., Third-Party Defendants and Counterclaim Plaintiffs-Respondents, et al., Counterclaim-Defendant. (And a Fourth-Party Action.) Soldiers', Sailors', Marines' and Airmen's Club, Inc., Plaintiff, v The Carlton Regency Corp., Defendant/Third-Party Plaintiff-Respondent. James Conforti, III, et al., Third-Party Defendants and Counterclaim Plaintiffs-Respondents, et al., Counterclaim-Defendant. James Conforti, III, et al., Fourth Party Plaintiffs-Appellants, v Chicago Title Insurance Company et al., Fourth-Party Defendants-Respondents, et al., Fourth-Party Defendants. [945 NYS2d 40]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered February 23, 2011, which, to the extent appealed from, denied plaintiff's motion for summary judgment on its cause of action seeking a declaration that the lease at issue violated the rule against perpetuities and, sua sponte, dismissed that cause of action, granted fourth-party defendants Marc Putterman and David May's motion to dismiss the cause of action for negligence and negligent misrepresentation as against them, granted fourth-party defendant Chicago Title Insurance Company's motion to dismiss the cause of action seeking a declaration in favor of fourth-party plaintiffs on their insurance coverage claim against it, and granted third-party plaintiff Carlton Regency Corp.'s motion to dismiss third-party defendants and counterclaim plaintiffs' counterclaims for unjust enrichment, promissory estoppel (to the extent not premised on the 1980, 2003 and 2006 agreements), preliminary injunctive relief, and breach of the implied covenant of good faith and fair dealing, unanimously modified, on the law, to deny Carlton Regency's motion as to the counterclaims for promissory estoppel premised on the 1980, 2003 and 2006 agreements and for breach of the implied covenant of good faith and fair dealing, to reinstate plaintiff's cause of action for a declaration that the lease violated the rule against perpetuities, and to declare that the lease does not violate the rule against perpetuities, and to deny Chicago Title's motion to dismiss the cause of action seeking a declaration and to declare in its favor on the fourth-party insurance coverage claim against it, and otherwise affirmed, without costs.

As an initial matter, plaintiff appears not to dispute the motion court's finding that the two 25-year lease renewal options do not violate the rule against perpetuities. Rather, plaintiff argues that once it is forced to vacate the premises, its obligation to maintain them for another 60 years, receiving rent of only $30,000 per year, will become so burdensome as to constitute an unreasonable restraint (see Restatement of Property § 395). Plaintiff argues further that the option contract violates the rule against perpetuities because it requires Carlton to purchase the property at a rate that was fixed for longer than the period allowed by statute (see EPTL 9-1.1 [b]). These arguments are unavailing.

While it may be that, without the right to possession of the demised premises, plaintiff will suffer economic hardship as a

result of the lease, that does not render the lease an unreasonable restraint on alienation. In other words, the property can be "alienated"—only not in a manner economically beneficial to plaintiff. However, that is the deal that plaintiff struck. Represented by competent counsel, it negotiated and executed the lease, then the sublease, without regard to its own rights during the remainder period, and "the courts will not interfere" with the economically harsh result (see *Murray Hill Mews Owners Corp. v Rio Rest. Assoc. L.P.*, 92 AD3d 453, 454 [2012]; *George Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 218 [1978]; *CBS Inc. v P.A. Bldg. Co.*, 200 AD2d 527 [1994]).

Plaintiff also argues that the lease creates an "unlawful suspension of a possessory interest," because after plaintiff vacates the premises, no other party has a right to occupancy. However, when plaintiff vacates, in 2013, Carlton, pursuant to certain assignments by the developers (the fathers of Conforti and Lyras), will have 60 years remaining on the lease. Thus, the right of possession will revert to Carlton.

As to the option contract, the rule against perpetuities is not implicated, because only plaintiff—the owner of the demised premises—can compel specific performance of the option, and plaintiff has no obligation to sell to Carlton. Essentially, plaintiff has an irrevocable offer to purchase the demised premises, albeit for a certain price. The fixed price purchase, however, does not impair the power of alienation, because plaintiff may sell the property to anyone else at any time for a different price (Restatement of Property § 372 ["any interest which is (a) neither a remainder nor an executory interest, and (b) left in, or limited in favor of, the conveyor, or the successors of the conveyor is not required to comply with the rule against perpetuities"]). Rather than dismissing the cause of action against Carlton for a declaratory judgment, however, the motion court should have declared in favor of Carlton (see *Maurizzio v Lumbermens Mut. Cas. Co.*, 73 NY2d 951, 954 [1989]).

Plaintiff's standing argument fails with the failure of its argument that the option contract violates the rule against perpetuities.

The court appropriately resolved Conforti and Lyras' counterclaim against Chicago Title in favor of the latter, but, again, rather than dismissing the claim, it should have issued a declaration (*id.*). The title policy covered the leasehold as vested in the developers. When the developers transferred their interests to Carlton without including in the documentation any guaranty or covenant of warranty, the leasehold was no longer vested in the developers, and Chicago Title's obligations under the title

policy ceased to exist. Conforti and Lyras have not identified any clause of the contracts assigning the developers' interest that reserved any leasehold interest to the developers.

The court correctly granted Carlton's motion to dismiss Conforti and Lyras's counterclaims for unjust enrichment and temporary injunctive relief as against it. The unjust enrichment claim was premised upon the annual rent payments, but the payments were made either at the behest of plaintiff or in return for an interest in the lease remainder (*see Georgia Malone & Co., Inc. v Rieder*, 86 AD3d 406, 408 [2011]; *Kagan v K-Tel Entertainment*, 172 AD2d 375, 376 [1991]).

Conforti and Lyras admit that they never requested temporary injunctive relief, so the claim may not proceed because Carlton was never put on notice of it (*see* CPLR 6311).

The court correctly dismissed the fourth-party negligence and negligent misrepresentation claims as against Putterman and May, since Conforti and Lyras allege no facts establishing a duty owed to them independent of the 2003 and 2006 contracts signed by Putterman and May in their capacities as representatives of Carlton (*see Vue Mgt., Inc. v Photo Assoc.*, 81 AD3d 569 [2011]).

As to Conforti and Lyras's promissory estoppel claims against Carlton, since there is a bona fide dispute as to the viability of the 2003 and 2006 agreements and as to whether the 1980 agreement was breached, to the extent the claim is premised on those agreements it may proceed, even to the extent the promises asserted are subsumed by the agreements (*see Meyers Assoc., L.P. v Conolog Corp.*, 61 AD3d 547, 548 [2009]). However, to the extent the claim is premised on the lease, sublease and option contract, it is not viable, because Carlton was not a party to those contracts, and the developers could not have relied on any promises it made in the execution thereof.

As to the good faith and fair dealing claim against Carlton, pursuant to the 2003 and 2006 agreements, Carlton agreed, essentially, to do nothing adverse to the rights of Conforti and Lyras, and, in fact, to aid Conforti and Lyras in obtaining further rights to the demised premises. However, after executing these agreements, it entered into a settlement agreement with plaintiff, promising, inter alia, not to confer any additional rights on Conforti and Lyras. While not every term of the settlement agreement violated the promises made by Carlton in the 2003 and 2006 agreements, Carlton's entering into the settlement agreement plainly violated the spirit of those agreements. Concur—Tom, J.P., Sweeny, Renwick, Freedman and Abdus-Salaam, JJ.